# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIAM RUMSEY,**

           **Plaintiff,**

      **v.**                                          **Case No. 20-CV-257**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

           **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Alleging that he has been disabled since October 15, 2015 (Tr. 14), William George Rumsey seeks disability insurance benefits. After his application was denied initially (Tr. 76-86) and upon reconsideration (Tr. 87-99), a hearing was held before an administrative law judge (ALJ) on September 6, 2018 (Tr. 27). On January 2, 2019, the ALJ issued a written decision concluding that Rumsey was not disabled. (Tr. 22.) After the Appeals Council denied Rumsey's request for review on December 19, 2019 (Tr. 1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Rumsey "has not engaged in substantial gainful activity since October 15, 2015, the alleged onset date[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Rumsey has the following severe impairments: "degenerative disc disease of the lumbar spine, primary osteoarthritis of both knees, paresthesia and pain of both upper and lower extremities, idiopathic gout, obesity[.]" (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Rumsey "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Rumsey has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could perform no climbing of ladders, ropes, or scaffolds. The claimant could engage in no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. The claimant should avoid work in hazardous environments such as unprotected heights or dangerous moving machinery. The claimant should not perform jobs that require repeated or prolonged forceful gripping or turning, but the claimant can frequently reach, handle, and finger.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Rumsey "is capable of performing past relevant work as a Parts Manager." (Tr. 21.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The ALJ did not perform this step, presumably because she found Rumsey capable of performing his past relevant work.

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"

*L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Rumsey argues that the ALJ erred by (1) improperly limiting the weight of Dr. Joshua Block's opinion; (2) failing to account in the RFC assessment for his need to elevate his legs; (3) improperly concluding that he could frequently finger and handle; and (4) failing to account for his non-severe mental impairments.

**4.1 Dr. Joshua Block, M.D.**

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and

citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

Treating physician Joshua Block, M.D., opined that Rumsey could sit for less than two hours per day and stand/walk for less than 2 hours per day, would need 15 minute unscheduled breaks every 1-2 hours, could rarely lift and carry less than 10 pounds, and would miss more than four days of work per month. (Tr. 1096-98.) He identified "x-ray & MRI imaging, EMG nerve testing, specialist evaluation & treatments[,] my clinical evaluations" as clinical findings and objective signs in the opinion itself. (Tr. 1095.)

The ALJ gave Dr. Block's opinion "little weight" because,

> [w]hile he in [sic] acceptable medical source who has treated the claimant, many of his opinions appear to be grounded largely in the claimant's subjective statements as opposed to objective medical evidence, and his stark physical limitations are inconsistent with substantially more benign objective assessment by Dr. Block (e.g. Exhibit 14F p.26, noting that an MRI ordered by Dr. Block "came out clear"; Exhibit 12F p.22, noting that the claimant, at a January, 2017 medical visit, appeared in no acute distress, intact strength and range of motion in his joints, a normal joint and station, and a substantially normal mental status assessment). Furthermore, statements such as his assertion that the claimant would miss more than four days of work per month due to the symptoms of his impairments (Exhibit 18F p.5) are offered without corroborating objective evidence.

(Tr. 21.)

Rumsey argues that the ALJ's opinion offers no evidence that Dr. Block relied on Rumsey's subjective statements and that his opinion was in fact based on objective evidence cited in the opinion itself. (ECF No. 13 at 14.) He argues that other medical

6

evidence in the record supports Dr. Block's opinion and cites medical notes discussing objective evidence. (ECF No. 13 at 18.)

The Commissioner responds that Rumsey has not shown reversible error in the ALJ's analysis because the "stark physical limitations" in Dr. Block's opinion are inconsistent with the medical record. (ECF No. 18 at 9.) The Commissioner cites the same evidence as the ALJ and adds that "[t]he ALJ discussed additional evidence that conflicted with Dr. Block's opinion earlier in her decision." (ECF No. 18 at 9.)

The first document cited by the ALJ as evidencing a "more benign objective assessment by Dr. Block" (Ex. 14F) is not an assessment by Dr. Block at all. Rather, it is a progress note by a social worker meeting with Rumsey regarding depression. (Tr. 996.) While it is true that the social worker recorded Rumsey as saying that Dr. Block had told him that his "MRI came out clear," it cannot be cited as an assessment by Dr. Block and used to justify giving little weight to his opinion.

The second document cited by the ALJ, Exhibit 12F, is a preoperative note from Dr. Block when Rumsey reported to him for evaluation and clearance for surgery on his right ankle. (Tr. 878.) Because this note documents a physical examination with normal musculoskeletal and psychiatric findings, it *can* be fairly characterized as a substantially more benign objective assessment by Dr. Block. (Tr. 883.)

Nor has Rumsey demonstrated that the ALJ erred when she concluded that Dr. Block's assertion that Rumsey would miss more than four days of work per month due

7

to the symptoms of his impairments was offered without corroborating objective evidence. The medical records that Rumsey quotes to support his argument that the record supports Dr. Block's opinion discuss "minimal," "mild to moderate," and some "moderate" findings. (ECF No. 13 at 17-21.) But there is no explanation as to how these records demonstrate that Rumsey would miss more than four days of work per month.

The ALJ supported with substantial evidence her decision to give little weight to Dr. Block's opinion.

**4.2 Leg Elevation**

Rumsey argues that the ALJ erred in failing to address his need to elevate his legs above his heart. (ECF No. 13 at 21-22.) He argues that this omission is significant because the Vocational Expert testified that there is no competitive employment for those who need to elevate their legs above their heart 50-75% of the time. (ECF No. 20-21; Tr. 72.)

The Commissioner responds that medical notes show either that Rumsey did not have lower extremity edema or that it was "under good control." (ECF No. 18 at 7.) He argues that the ALJ's analysis is sufficient without addressing the edema because other substantial evidence (e.g., generally normal musculoskeletal examinations) supports the RFC finding. (ECF No. 18 at 4-5.)

In the RFC determination the ALJ noted that Rumsey "testified that he experiences pain and swelling in his bilateral extremities, that makes it difficult for him to stand and walk for extended periods of time." (Tr. 19.) The ALJ also discussed two physical

examinations with detailed musculoskeletal findings that do not document edema and one examination that affirmatively finds he has "no edema." (Tr. 883, 937, 1049.) The ALJ also explained that she gave great weight to State agency consultants Dr. Walcott and Dr. McKee, who "concluded that [Rumsey] was not as physically limited as he alleged" and could perform light work with no additional limitations. (Tr. 20.) By discussing Rumsey's testimony on leg swelling and physical examinations without leg edema, the ALJ made it clear that she did not include leg elevation in the RFC because she concluded it was not consistent with the medical testimony on which she relied.

The ALJ's failure to include in the RFC a need to elevate Rumsey's legs is not a basis for remand.

**4.3 Handling and Fingering**

The ALJ found that Rumsey was limited to frequent handling and fingering. (ECF No. 18.) Rumsey argues that the ALJ did not support with substantial evidence her conclusion regarding his manipulative abilities. (ECF No. 13 at 24.) He argues that, because the state agency physicians found no manipulative limitations, the ALJ improperly made her own independent findings. (ECF No. 13 at 22.)

The Commissioner responds that the determination of a claimant's RFC is the responsibility of the ALJ alone, and the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." (ECF No. 18 at 7) (*quoting Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). He argues

that the frequent handling and fingering limitation reflects a generous compromise between the opinions of the state agency physicians and Rumsey's reported subjective symptoms. (ECF No. 18 at 7.)

In the RFC determination the ALJ found that, "[g]iven [Rumsey's] paresthesia and pain in his upper extremities, as well the [sic] possibility of some neuropathic symptoms, and notations in the record regarding carpal tunnel, the above manual dexterity limitations are merited." (Tr. 20.) She discussed state medical expert opinions that concluded that Rumsey could perform light work with no additional limitations and other medical evidence that he has some manipulative limitations. (Tr. 20.)

The ALJ's RFC limitations reflect that she weighed Rumsey's physicians' opinions along with his testimony and other record evidence. *Schmidt*, 496 F.3d at 845 (finding the ALJ's determination of the claimant's physical limitations supported by substantial evidence when the ALJ "weigh[ed] all of Schmidt's physicians' opinions along with her testimony and the other record evidence.") The ALJ supported with substantial evidence her conclusion regarding Rumsey's manipulative abilities.

### 4.4 Non-Severe Mental Impairments

Consultative examiner Dr. Kelly Schinke, Psy.D., opined that

> Rumsey is not likely to have difficulty understanding, recalling, and carrying out simple instructions. He was able to recall information and follow directions adequately in this evaluation. Mr. Rumsey is not likely to have difficulty responding appropriately to his supervisors and co-workers, as he was polite and appropriate today. Mr. Rumsey may have difficulty maintaining concentration and attention. He reported he easily

> loses focus, and feels he is experiencing poverty of thought. Mr. Rumsey
> may not have adequate psychological resources to deal effectively with
> work stresses or adapt to changes. He appears to be experiencing symptoms
> of depression and anxiety despite multidisciplinary treatment.

(Tr. 563.)

Arguing that the ALJ erred in failing to include in the RFC limitations from his depression, Rumsey contends that, because Dr. Schinke was a consultive examiner retained by the SSA, it is suspicious that the ALJ rejected her opinion on his mental limitations. (ECF No. 13 at 26-30.) He argues that Dr. Schinke relied on her mental status exam in addition to Rumsey's subjective statements to determine his limitations. (ECF No. 13 at 29.) And he argues this omission is prejudicial because even mild limitations can preclude skilled work, and the ALJ found Rumsey not disabled based on his ability to perform skilled past relevant work. (ECF No. 13 at 31-32.)

In response, the Commissioner argues that the ALJ did not err in omitting mental limitations from the RFC because her thorough discussion of Rumsey's mental impairments at Step 2 supports her conclusion. (ECF No. 18 at 16.) He also argues that the ALJ reasonably concluded that Dr. Schinke's opinion was largely grounded in Rumsey's subjective statements and was a "fairly equivocal and benign assessment." (ECF No. 18 at 17.) He argues that the ALJ's conclusion is reasonable because it "mirrors" Dr. Schinke's conclusion. (ECF No. 18 at 17.)

Dr. Schinke's opinion is equivocal in that it opines only that Rumsey "may have" various restrictions and largely relies on limitations that "he reports" to support those

restrictions. At Step 2 the ALJ thoroughly discussed why she found Rumsey had only mild mental limitations. (Tr. 16-17.) By addressing Rumsey's mental impairments at Step 2, the ALJ made it clear that she did not include mental limitations in the RFC because she determined the mild limitations did not merit a limitation in the RFC. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (Internal citation omitted.) Thus, the ALJ's decision not to include in the RFC Rumsey's non-severe mental impairments is supported by substantial evidence.

5. **Conclusion**

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of May, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge